## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CNH AMERICA LLC and BLUE LEAF I.P., INC. )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>KINZE MANUFACTURING, INC. )<br>)<br>Defendant. )<br>)<br>)<br>)<br>) | CIVIL ACTION NO.: 08-945-GMS |

CNH AMERICA LLC and BLUE LEAF
I.P., INC.

       Plaintiffs,

v.

KINZE MANUFACTURING, INC.

       Defendant.

CIVIL ACTION NO.: 08-945-GMS

## **FINAL JURY INSTRUCTIONS**

## TABLE OF CONTENTS

1.  GENERAL INSTRUCTIONS ....................................................................................3

    1.1   INTRODUCTION ..........................................................................................3
    1.2   JUROR'S DUTIES ........................................................................................4
    1.3   EVIDENCE DEFINED ..................................................................................5
    1.4   CONSIDERATION OF EVIDENCE ...........................................................6
    1.5   DIRECT AND CIRCUMSTANTIAL EVIDENCE ....................................7
    1.6   CREDIBILITY OF WITNESSES ................................................................8
    1.7   EXPERT WITNESSES ..................................................................................9
    1.8   NUMBER OF WITNESSES .......................................................................10
    1.9   BURDEN OF PROOF ..................................................................................11

2.  THE PARTIES AND THEIR CONTENTIONS ..............................................12

    2.1   PLAINTIFF CASE IH'S CONTENTIONS ...............................................13
    2.2   DEFENDANT KINZE'S CONTENTIONS ...............................................14

3.  INFRINGEMENT ................................................................................................15

    3.1   PATENT INFRINGEMENT - GENERALLY ..........................................16
    3.2   PATENT CLAIMS .......................................................................................17
    3.3   INDEPENDENT AND DEPENDENT CLAIMS .....................................19
    3.4   PREAMBLE/TRANSITIONAL LANGUAGE .........................................20
    3.5   DIRECT INFRINGEMENT ........................................................................21
    3.6   LITERAL INFRINGEMENT .....................................................................23
    3.7   INFRINGEMENT DESPITE DEFENDANT'S IMPROVEMENTS OR
            PATENTS ON IMPROVEMENTS ...........................................................24
    3.8   WILLFUL INFRINGEMENT ....................................................................25

4.  INVALIDITY-GENERALLY .............................................................................28

    4.1   PRESUMPTION OF VALIDITY ..............................................................29
    4.2   PRIOR ART DEFINED ...............................................................................30
    4.3   ANTICIPATION ..........................................................................................31
    4.4   DATE OF INVENTION ..............................................................................33
    4.5   PROOF OF EARLIER INVENTION ........................................................35
    4.6   OBVIOUSNESS ...........................................................................................36
    4.7   LEVEL OF ORDINARY SKILL ...............................................................39
    4.8   SCOPE AND CONTENT OF THE PRIOR ART .....................................40
    4.9   PRIOR ART ..................................................................................................41
    4.10  FACTORS INDICATING NON OBVIOUSNESS ...................................42
    4.11  WRITTEN DESCRIPTION ........................................................................44
    4.12  DEFINITENESS ...........................................................................................46
    4.13  ENABLEMENT ...........................................................................................47

5.  UNENFORCEABILITY .......................................................................................49

    5.1   INEQUITABLE CONDUCT .......................................................................49
    5.2   MATERIALITY ...........................................................................................50

i

|       | 5.3 | INTENT TO DECEIVE | 51 |
|       | 5.4 | BALANCING OF MATERIALITY AND INTENT | 52 |
| 6.    |     | DAMAGES – GENERALLY | 53 |
|       | 6.1 | REASONABLE ROYALTY - DEFINITION | 54 |
|       | 6.2 | DAMAGES – BURDEN OF PROOF | 55 |
|       | 6.3 | WHEN DAMAGES BEGIN | 56 |
|       | 6.4 | ENTIRE MARKET VALUE RULE | 57 |
|       | 6.5 | REASONABLE ROYALTY AS A MEASURE OF DAMAGES | 58 |
|       | 6.6 | INTEREST | 61 |
| 7.    |     | DELIBERATION AND VERDICT | 62 |
|       | 7.1 | INTRODUCTION | 62 |
|       | 7.2 | DUTY TO DELIBERATE | 63 |
|       | 7.3 | COURT HAS NO OPINION | 65 |

## 1.   GENERAL INSTRUCTIONS

### 1.1   INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions.   You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read.   You will be able to take your copies with you into your deliberations and refer to them at any time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case.

Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

## 1.2   JUROR'S DUTIES

Members of the Jury, it is important that you bear in mind the distinction between your duties and my duties. You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. You are the sole judges of the facts. It is your judgment, and your judgment alone, to determine what the facts are, and nothing I have said or done during this trial is meant to influence your decisions about the facts in any way.

Your second duty is to take the law that I give you, apply to the facts, and decide if the parties are liable.

Now, as far as my duty is concerned, I have the duty of advising you about the law you should apply to the facts as you find them. You are not to consider whether the principles I state to you are sound or whether you agree with them. You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. You must accept them despite how you feel about their wisdom. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

### 1.3   EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, deposition transcript testimony that was presented to you, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed. Certain charts, summaries and graphics have been used to illustrate testimony from witnesses. These charts, summaries and graphs are not themselves evidence, and only are as good as the underlying evidence supporting them. You should, therefore, give them only as much weight as you think the underlying evidence deserves.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. The lawyers' questions and objections are not evidence. My legal rulings are not evidence. My comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said if he or she had been allowed to answer, or what an exhibit might have shown if I had admitted it. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

## 1.4     CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### 1.5    DIRECT AND CIRCUMSTANTIAL EVIDENCE

You have heard the terms direct and circumstantial evidence.

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that she saw it was raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is better than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## 1.6    CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. You should consider: each witness's means of knowledge, strength of memory, and opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you cannot do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at trial. You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend on whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.

8

## 1.7    EXPERT WITNESSES

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighting expert testimony, you may consider:  the expert's qualifications; the reasons for the expert's opinions; the reliability of the information supporting the expert's opinion; the consistency of the expert's opinion with other evidence, testimony, and common sense; as well as the factors that I have previously mentioned for weighting testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate given all the other evidence in the case.  You are free to accept or reject the testimony of experts, just as with any other witness.

## 1.8    NUMBER OF WITNESSES

One more point about the witnesses.   Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified.   What is more important is how believable the witnesses are, and how much weight you think their testimony deserves.   Concentrate on that, not on the numbers.

## 1.9    BURDEN OF PROOF

In any legal action, facts must be proved by a required weight of the evidence, known as the "burden of proof." In a civil case such as this, there are two different burdens of proof that are used. The first is called preponderance of the evidence. The second is called clear and convincing evidence.

In this case, Case IH asserts claims for infringement of the Patents-in-Suit. Case IH has the burden of proving its claims of patent infringement and damages by a preponderance of the evidence. That means Case IH must produce evidence that, when considered in light of all the facts, leads you to believe that what Case IH claims is more likely true than not. To put it differently, if you were to put the parties' evidence on opposite sides of a scale, the evidence supporting Case IH's claims would have to make the scales tip somewhat on that party's side.

Kinze asserts that Case IH's patents are invalid. Kinze has the burden of proving by clear and convincing evidence that the patents are invalid. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

Finally, Case IH asserts a claim for willful infringement, which it must prove by clear and convincing evidence.

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt. That requirement does not apply to a civil case; therefore, you should put it out of your mind.

## 2.   THE PARTIES AND THEIR CONTENTIONS

As I did at the start of the case, I will give you a summary of each side's contentions in this case.  I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

### 2.1    PLAINTIFF CASE IH'S CONTENTIONS

Case IH seeks a determination that Kinze has infringed the '428 and '193 patents as a result of the unauthorized manufacture, use, offer for sale and sale of Kinze's EdgeVac seed meters and planters (the "Accused Products"). Case IH also contends it has been damaged by Kinze's infringing conduct and Case IH is seeking damages to compensate it for the alleged infringement and that Kinze's alleged infringement was willful.

If Kinze is found to infringe any of the asserted claims of the patents, Case IH contends that it is entitled to recover damages in the amount of a reasonable royalty.

## 2.2    DEFENDANT KINZE'S CONTENTIONS

Kinze contends that the accused EdgeVac seed meters do not infringe the '428 or '193 patents because its products do not fall within the scope of any of the claims of the asserted patents.

Kinze further contends that the Case IH patents are invalid. Specifically, Kinze contends that the asserted claims of the '428 and '193 patents are not new and/or are obvious in view of the prior art. Additionally, Kinze contends that the patents are invalid because the claims are indefinite, not enabled, and lack a written description. Kinze further contends that the patents are not enforceable against it because of alleged misrepresentations and omissions made to the Patent Office when the patents were being obtained and during the subsequent reexamination.

### 3.    INFRINGEMENT

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case.  I will now give you more detailed instructions about the patent laws that specifically relate to this case.  If you would like to review my instructions at any time during your deliberations, they will be available to you in the jury room.

### 3.1  PATENT INFRINGEMENT - GENERALLY

A patent owner has the right to stop others from making, using, offering for sale and/or selling the invention covered by its patent claims during the life of the patent.  If any person does so without the patent owner's permission before the expiration of the patent, that person is said to infringe.  In this case, Case IH alleges that the Accused Products infringe certain claims of the '428 and '193 patents.

It is your job to determine whether or not Case IH has proved that Kinze has infringed one or more of the claims of either of the '428 or '193 patents by a preponderance of the evidence.  Deciding whether a claim has been infringed is a two-step process.  First, the meaning of the patent claim is determined as a matter of law.  That job is for the Court, and I have told you what the key terms of the asserted claims mean as a matter of law.  In the second step, the claim, as I have construed it, must be compared to the accused products to determine whether every element of the claim is found in the accused products.  This element-by-element comparison is your responsibility as the jury.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed.  You must compare each of the patent claims, as I have defined them, to each of the accused Kinze products, and determine whether or not there is infringement.  You should not compare Kinze's seed meters with any specific example set out in the patents, or with any of Case IH's seed meters.  The only correct comparison is with the language of the claims themselves, as I have explained their meaning to you.

## 3.2    PATENT CLAIMS

Before you can decide whether Kinze has infringed Case IH's '428 and '193 patents, you will have to understand patent "claims." Patent claims define, in words, the boundaries of what are Case IH's claimed inventions. The patent claims are the numbered sentences at the end of the patent. Claims are usually made up of  parts, called "elements" or "limitations." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate element or limitation of the claim.

The patent claims at issue here are claims 17, 18, 146, and 207 of the '428 patent, and claims 62, 129, 135 and 190 of the '193 patent. Each of the claims must be considered individually. Only the claims of a patent can be infringed. Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed. The specification and drawings merely describe certain embodiments (examples) of the invention. You must compare each of the patent claims, as I have defined them, to each of the Accused Products, and determine whether or not there is infringement. You should not compare the Accused Products with any specific example set out in the patents, or with any of Case IH's products. The only correct comparison is with the language of the claims themselves, as I have explained their meaning to you. If I have not provided a specific definition for a given term, you are to use the plain and ordinary meaning.

You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

I instruct you that the following claim terms have the following definitions that have been construed by me:

17

**The '428 Patent:**

1.  The terms "disc" and "disc metering member" are construed to have their plain and ordinary meanings.

2.  The term "proximate" is construed to mean "close to or near."

3.  The term "seed discharge area" is construed to mean "the area or region of the seed meter where the seeds are released from the disc."

4.  The terms "to promote the release of seeds from the disc" and "promoting the release of seeds from the disc" are construed to have their plain and ordinary meaning, which is to facilitate or assist the release of seeds from the disc.

5.  The term "plurality of spaced openings" is construed to have its plain and ordinary meaning.

6.  The term "drop chute extending from a seed discharge area" is construed to mean "a channel or passage, extending from the seed discharge area, through which the seeds pass after they drop from the seed discharge area."

7.  The terms "circumferential wall" and "circumferential rim" are construed to mean "an axially extending circumferential portion of the housing."

8.  The terms "contained within the circumferential wall" and "within said rim," are construed to have their plain and ordinary meaning.

**The '193 Patent:**

1.  The term "disc" is construed to have its plain and ordinary meaning.

2.  The term "plurality of openings" is construed to have its plain and ordinary meaning.

3.  The term "adjacent" is construed to mean "close to or near."

4.  The term "seed discharge area" is construed to mean "the area or region of the seed meter where the seeds are released from the disc."

5.  The term "promote the release of seeds from a disc" is construed to have its plain and ordinary meaning, which is to facilitate or assist the release of seeds from the disc.

6.  The term "circumferential wall" is construed to mean "an axially extending circumferential portion of the housing."

7.  The term "contained within" is construed to have its plain and ordinary meaning.

### 3.3   INDEPENDENT AND DEPENDENT CLAIMS

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, claims 18 of the '428 patent and 129 of the '193 patent are independent claims.

The remainder of the asserted claims in the patents are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim. If you find that an independent claim is not infringed, then you cannot find a claim that depends from the independent claim to be infringed.

### 3.4    PREAMBLE/TRANSITIONAL LANGUAGE

The asserted '428 claims are for a seed metering apparatus and the asserted '193 claims are for a seed planter apparatus.  The preambles of the asserted claims in both patents use the word "comprising" or the word "comprises."  The words "comprising" and "comprises" are open-ended transitional words that indicate to the reader that the claim covers devices having additional features not recited in the claim.  For example, a claim to a table comprising a tabletop and legs would cover a table that includes a tabletop and legs, even if the table also has wheels on the tables' legs.

### 3.5 DIRECT INFRINGEMENT

I will now instruct you on how to decide whether or not an alleged infringer has infringed the patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another claim, and infringement of only one claim of either patent is sufficient for you to find liability.

A patent owner has the right to stop others from using the invention covered by its patent during the life of the patent. If a person uses, sells, or offers to sell, within the United States, or imports into the United States, what is covered by the patent claims without the patent owner's permission that person is said to infringe the patent.

Deciding whether a claim has been directly infringed is a two-step process. First, I have determined the meaning of the patent claims, as a matter of law. This is my job, and I have instructed you as to what the key terms of the asserted claims mean, as a matter of law. You must give the remaining terms their plain English meanings. Second, you must compare each claim as I have interpreted it to the Accused Products to determine whether or not every element of the claim can be found in any of the accused Kinze products. This element-by-element comparison is your responsibility as jury for this case.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You should not compare the accused Kinze products to the patents figures or to another product in determining infringement. Rather, you must compare the accused Kinze products to each of the patent claims, as I have defined them, and determine whether or not the products infringe.

Also, keep in mind that intent to infringe, actual knowledge of a patent, or knowledge that one is infringing a patent, are not part of a claim for patent infringement. In other words, someone can directly infringe a patent without knowing that what they are doing is an

infringement of a patent.  They also may infringe even though they believe in good faith that what they are doing is not an infringement of the patent.  However, this intent element is different for purposes of deciding whether the infringement is willful and the two should not be confused.  I will instruct you on the issue of intent in a willful infringement context later.

### 3.6    LITERAL INFRINGEMENT

To determine literal infringement, you must compare each of the Accused Products with each claim that Case IH asserts was infringed, using my instructions as to the meaning of the patent claims. A patent claim is literally infringed if you find that Case IH has proven by a preponderance of the evidence that the product includes each and every limitation in that patent claim. If the product omits any single limitation recited in a claim, then Kinze does not literally infringe that claim. You must determine literal infringement with respect to each patent claim individually. Each claim limitation must be literally found in the accused products exactly as written.

Remember, the question is whether Kinze's Accused Products infringe any claim of Case IH's '428 or '193 patents, and not whether Kinze's Accused Products are similar or even identical to any product made by Case IH. Accordingly, you must be certain to compare Kinze's Accused Products with the claims they are alleged to infringe and not to any product made by Case IH.

### 3.7   INFRINGEMENT DESPITE DEFENDANT'S IMPROVEMENTS OR PATENTS ON IMPROVEMENTS

You may find that Kinze's Accused Products represent an improvement over the invention defined in Case IH's patent claims. You also have heard evidence that Kinze obtained patents on its products or methods. However, as long as Kinze's Accused Products include all of the elements of at least one of Case IH's patent claims, then Case IH's patent claims are infringed by Kinze's Accused Products despite any improvements made or patents obtained by Kinze.

### 3.8    WILLFUL INFRINGEMENT

In this case, Case IH alleges that Kinze infringes the '428 and '193 patents willfully. If you find by a preponderance of the evidence that Kinze has infringed one or more of the claims of the '428 and/or '193 patents, you must go on and also decide whether or not Case IH has also established by clear and convincing evidence that Kinze infringed the '428 and/or '193 patents willfully, that is, with reckless disregard of the claims of Case IH's patents. To demonstrate such reckless disregard, Case IH must satisfy a two-part test.

The first part of the test is objective. Case IH must persuade you that Kinze acted despite an objectively high likelihood that its manufacture and sale of the Accused Products resulted in infringement of the Case IH '428 or the '193 patent. The state of mind of Kinze is not relevant to this inquiry. Rather, the appropriate inquiry is whether, to a reasonable person with knowledge of Case IH's patents, a high likelihood existed that Kinze infringed a valid patent prior to the litigation. Legitimate or credible defenses to infringement, including invalidity and unenforceability of the patents in suit, even if ultimately not successful, demonstrate a lack of recklessness. If you conclude that Kinze's conduct was reckless you then need to consider the second part of the test.

The second part of the test is subjective and depends on the state of mind of Kinze. Case IH must persuade you that Kinze knew, or it was so apparent that Kinze should have known, that its actions constituted an unjustifiably high risk of infringement of the Case IH '428 or the '193 patent.

In deciding whether Kinze committed willful infringement, you must consider the totality of the circumstances. The totality of the circumstances comprises a number of factors, which include, but are not limited to:

25

1.      Whether Kinze acted in a manner consistent with the standards of commerce for its industry;

2.      Whether Kinze intentionally copied aspects of Case IH's ASM that is covered by the '428 and/or '193 patent;

3.      Whether Kinze had a reasonable basis to believe that it had a substantial defense to the infringement and validity of the patents and reasonably believed that the defenses would be successful if litigated;

4.      Whether Kinze made a good faith effort to avoid infringing the patent, for example, by ceasing infringing activity or attempting to design around the patent;

5.      Whether or not Kinze obtained and followed the advice of a competent lawyer with regard to infringement, invalidity, and/or unenforceability.

6.      Whether or not Kinze tried to cover up its infringement.

Kinze argues that it did not act recklessly because it relied on a legal opinion that advised Kinze that the accused products methods did not infringe Case IH's patents or the patents were invalid. In assessing whether, under the totality of the circumstances, any infringement by Kinze was willful, you may consider whether Kinze relied upon a legal opinion that was well supported and believable (i.e., competent), and advised Kinze that the accused products methods did not infringe Case IH's patents or the patents were invalid.

A competent legal opinion must include: (i) the necessary factual foundation; (ii) application of the appropriate legal analysis to those facts; and (iii) a well-reasoned conclusion. Opinions that fail to meet these basic standards, or contain obvious errors of fact or law, should be considered incompetent and ineffective to shield against willful infringement. The competency requirement applies to both the qualificatns of the person giving the opinion and to

the content of the opinion itself.  If you find that Kinze received competent legal advice, you should then consider whether it actually relied upon and followed counsel's advice.  If you find that the opinion was not competent, then Kinze could not have reasonably relied on that opinion.

## 4.   INVALIDITY-GENERALLY

Patent invalidity is a defense to patent infringement. Even though the PTO examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether or not the claims of the patent are valid.

I will now instruct you on the invalidity issues you should consider. As you consider these issues, remember that the party asserting that a patent is invalid bears the burden of proving by clear and convincing evidence that the asserted claims in the patent are invalid.

28

### 4.1    PRESUMPTION OF VALIDITY

The law presumes that the Patent Office acted correctly in issuing the patent. Nevertheless, once the validity of a patent has been put at issue, it is the responsibility of the jury to review what the Patent Office has done consistent with these instructions on the law. When an attacker simply goes over the same ground traveled by the PTO, part of the burden is to show that the Patent Office was wrong in its decision to grant the patent.

Deference is due the Patent Office decision to issue patents with respect to evidence bearing on validity which it considered, but no such deference is due with respect to evidence it did not consider. All evidence bearing on the validity issue, whether considered by the Patent Office or not is to be taken into account by you in assessing validity.

Because the deference to be given the Patent Office's determination is related to the evidence it had before it, you should consider the evidence presented to the Patent Office during the patent application and reexamination process, compare it with the evidence you have heard in this case, and then determine what weight to give the Patent Office's determinations.

Kinze has the burden of proving invalidity of each patent claim by clear and convincing evidence.

## 4.2   PRIOR ART DEFINED

A party asserting a prior art reference must prove with clear and convincing evidence that it is prior art. Prior art includes any of the following items received into evidence during trial:

1.   any product that was publicly known or used by others in the United States before the patented invention was made;

2.   patents that issued more than one year before the filing date of the patent, or before the invention was made;

3.   publications having a date more than one year before the filing date of the patent, or before the invention was made;

4.   any product that Kinze has shown was in public use or on sale in the United States more than one year before the patent was filed;

5.   any product that was created by another in the United States before the invention was made, and was not subsequently abandoned, suppressed or concealed.

### 4.3    ANTICIPATION

Kinze contends that the claims of the '428 and '193 Patents are invalid because the claimed invention is not new.  For a claim to be invalid because it is not new, all of its requirements must have existed in a single device that predated the claimed invention, or must have been described to one of ordinary skill in the art in a single previous publication or patent that predated the claimed invention.  In patent law, such previous device, method, publication, or patent is called a "prior art reference."  If a patent claim is not new, we say it is "anticipated" by a prior an art reference.

The disclosure in the prior art reference does not have to be in the same words as the claim, but all of the elements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of agricultural equipment machinery design looking at that one reference would be able to make and use at least one embodiment of the claimed invention.  A prior art reference is not limited to its exact words or the scale of its drawings, but rather to what it teaches to one of ordinary skill in the agricultural equipment design field.

Anticipation also occurs when the claimed invention inherently (necessarily) results from practicing what is disclosed in the written reference, even if the inherent disclosure was unrecognized or unappreciated by one of ordinary skill in the field of the invention.  It is not required, however, that the person of ordinary skill would have recognized the inherent disclosure.  Thus, the prior use of the patented invention that was unrecognized and unappreciated can still be an invalidating anticipation.

To qualify as a prior art reference, a "printed publication" must be at least reasonably accessible to those interested in the field, even if it is difficult to find.  An electronic publication, including an online or internet publication, is a "printed publication" if it is at least reasonably accessible to those interested in the field, even if it is difficult to find.

31

The earliest effective filing date of the '428 patent is August 20, 1996, and the earliest effective filing date for the '193 patent is August 20, 1996 for claim 62 and April 15, 1998 for claims 129, 135 and 190.  If Kinze establishes that any prior art existed within one year of the effective filing date of any of the asserted claims, you must also determine a date of invention by Case IH for those asserted claims which the other party claims is anticipated.  If you find that Case IH invented the claimed subject matter of an asserted claim before the date of that prior art reference, you cannot rely on that prior art reference in determining whether that asserted claim is anticipated and invalid.  In other words, prior invention by the patent owner disqualifies a prior art reference, where the reference was not published or in public use or on sale more than one year before the effective filing date.

If a patent claim is not new as explained above, namely, that all of the elements of the claim are found either literally or inherently in a single prior art reference, you must find that claim invalid.

### 4.4    DATE OF INVENTION

Certain categories of prior art refer to the date at which the inventor made the invention. This is called the "date of invention."

I will now explain to you how to determine this date.

There are two parts to the making of an invention. The inventor has the idea of the invention. This is referred to as "conception" of the invention. A conception of an invention is complete when the inventor has formed the idea of how to make and use every aspect of the claimed invention, and all that is required is that it be made without the need for any further inventive effort. The actual making of the invention is referred to as "reduction to practice." An invention is said to be "reduced to practice" when it is made and shown to work for its intended purpose, for example, in a prototype or working model of a seed meter.

Under the patent laws, the date of invention is generally the date that the patent application was filed. This is also referred to as a "constructive reduction to practice." In this case, that date is August 20, 1996 for each of the asserted claims of the '428 patent, August 20, 1996 for claim 62 of the '193 patent, and April 15, 1998 for claims 129, 135 and 190 of the '193 patent. Ordinarily, art that came before the application's filing date is prior art to the patent claims. However, Case IH contends that inventors of the patents-in-suit actually reduced their invention to practice earlier than the filing date of the patents-in-suit. If Case IH establishes that the invention was reduced to practice at an earlier date, then any art after that earlier date cannot be considered prior art and therefore cannot invalidate the patent.

In attempting to prove an earlier invention date than the filing date of the patent, Case IH must produce corroborating evidence sufficient to show that it is entitled to the benefit of that earlier invention date by clear and convincing evidence.

Evidence of an earlier invention date may consist of memoranda, drawings, correspondence, notebooks and witness testimony. However, an inventor's testimony standing alone cannot establish an earlier conception and reduction to practice date for the claims of the patents in suit. Such testimony must be corroborated by independent evidence. Therefore, in order for Case IH to prove that it is entitled to an earlier date of invention than the filing date of the patent application, the inventors must provide independent corroborating evidence in addition to the inventors' own statements and documents.

### 4.5    PROOF OF EARLIER INVENTION

A device or method may be prior art to the patent claims where it was conceived by another inventor in this country, before the date of invention by the inventor on the patent, and was diligently reduced to practice thereafter and not subsequently abandoned, suppressed, or concealed.

However, a patent cannot be invalidated based solely on one person's testimony without corroborating evidence, particularly documentary evidence.  Corroboration is required of any witness whose testimony alone is asserted to invalidate a patent.  Further, any documentary evidence must be supportive and consistent; the testimony of the witnesses together with the documentary evidence must be coherent and convincing.

In this case, Kinze is asserting that the Krause "two-hole" seed cup was made by another inventor before the invention claimed in the patents in suit.  Kinze has the burden of establishing prior invention by another by clear and convincing evidence.

If you find that Kinze has met this burden, then you must consider whether Case IH has established that the subject matter of the patents-in-suit was invented by Case IH prior to the invention of the Krause "two-hole" seed cup by Krause.  A patent inventor's testimony, standing alone cannot establish an earlier date of inventtion for the claims of the patents in suit.  In order to prove an earlier invention date than the filing date of the patents, Case IH must produce corroborating evidence sufficient to show that it is entitled to the benefit of that earlier invention date.

## 4.6    OBVIOUSNESS

Even though an invention may not have been identically disclosed or describe before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the inventions was made.

Kinze may establish that a patent claim is invalid by showing by clear and convincing evidence that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of the invention.

In determining whether a claimed invention is obvious, you must consider the following factors to determine whether Kinze has established that the claimed inventions are obvious:

1)      the scope and content of the prior art relied upon by Kinze;

2)      the difference or differences, if any, between each claim of the '428 patent and each claim of the '193 patent that Kinze contends is obvious and the prior art;

3)      the level of ordinary skill in the art at the time the inventions of the '428 and '193 patents were made; and

4)      additional considerations, if any, that indicates that the invention was obvious or not obvious.

I will explain each of the four factors in more detail later.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. Accordingly, you must be careful not to determine obviousness using hindsight to reconstruct or piece together the invention; many true inventions can be seen obvious after the fact. You should put yourself in the position of a person of ordinary skill in the

field of the invention at the time the claimed invention was made, and you should not consider what is known today or what is learned from the teaching of the patent.

In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field of agricultural equipment design to combine the known elements in a way the claimed invention does, taking into account such factors as:

1)  whether the claimed invention was merely the predictable result of using prior art elements according to their known functions;

2)  whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3)  whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

4)  whether the prior art teaches away from combining elements in the claimed invention;

5)  whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and

6)  whether the change resulted more from design incentives or other market forces

To find it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

Remember, in determining whether the subject matter of a patent claim is obvious, neither the particular motivation nor the avowed purpose of the patentee controls. A motivation

may be found implicitly in the prior art as a whole without being explicitly discussed or suggested in any individual piece of prior art.

## 4.7     LEVEL OF ORDINARY SKILL

Several times in these instructions, I have referred to a person of ordinary skill in the field of invention.  The parties agree that a typical person of ordinary skill in the relevant art as of the mid to late 1990's would be a designer, mechanical engineer or the like having the equivalent of a post-high school education, such as a bachelors or graduate level education in mechanical engineering, or about two to four years of design experience in the area of the mechanical arts, such as arts related to machine design for, among other things, agricultural equipment.

## 4.8    SCOPE AND CONTENT OF THE PRIOR ART

As I instructed you, in arriving at your decision on the issue of whether or not the claimed inventions of the '428 and '193 patents are obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem with which the inventors faced. Prior art is reasonably pertinent if, although in a different field from that of the inventor's endeavor, it is one which, because of the matter with which it deals, logically would have presented itself as worthy of an inventor's attention in considering his problem. Scope and content of the prior art includes references from those areas a person with ordinary skill in the art would look at in solving a particular problem.

As you did in considering Kinze's anticipation contentions, you must first determine whether the material or devices relied upon by Kinze are "prior art." If these materials or devices are the same as those relied on by Kinze in alleging anticipation, your determination should be the same here. Thus, if you previously found something qualified as "prior art" for anticipation purposes, it is likewise prior art for the obviousness determination.

You must then consider what the qualifying prior art would have taught to one skilled in the art at the time of the invention.

## 4.9    PRIOR ART

I have one last point about prior art references.  If you find that a reference is prior art, you must evaluate the reference and determine whether or not there are any differences between the reference and the claims of the patent-in-suit.

When evaluating whether or not there are any differences between the invention and the reference, you must keep in mind that the patent claims define the invention.  Therefore, when applying the Court's claim construction, you cannot ignore a claim limitation.  Only the language of the claims dictates their meaning and scope.  When assessing a reference, however, all of the parts of the reference should be considered by you and compared to the claims.  A prior art reference is not limited to its exact words or its drawings, but rather to what it teaches to one of ordinary skill in the agricultural equipment machinery design field.  In addition, any patent drawings in a reference cannot be used to measure or determine proportions of the subject matter shown in the reference.

### 4.10   FACTORS INDICATING NON OBVIOUSNESS

Before deciding the issue of obviousness, you must also consider certain factors which, if established by Case IH, may indicate that the invention would not have been obvious. No factor alone is dispositive, and you must consider the obviousness or non obviousness of the invention as a whole.

- Were products covered by the claim commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim?

- Was there long felt need for a solution to the problem facing the inventors which was satisfied by the claimed invention?

- Did others try, but fail, to solve the problem solved by the claimed invention?

- Did others copy the claimed invention?

- Whether there were changes or related technologies or market needs contemporaneous with the invention;

- Did the claimed invention achieve unexpectedly superior results over the closest prior art?

- Did others in the field, or did Kinze, praise the claimed invention or express surprise at the making of the claimed invention?

- Did others seek or obtain rights to the patent from the patent holder;

- Disclosures in the prior art that criticize, discredit, or otherwise discourage the claimed invention and would therefore tend to show that the invention was not obvious.

Answering any of these questions "yes" may suggest that the claim was not obvious.

However, in your determination of obviousness, you must consider whether Case IH has demonstrated not only that such secondary considerations exist, but also whether Case IH has proven that there is a sufficient nexus or connection between the considerations and the claimed inventions of the '428 and '193 patents.

### 4.11   WRITTEN DESCRIPTION

The patent law contains certain requirements for the part of the patent called the specification.  Kinze contends that the claims of the '428 and '193 are invalid because the specification of the patents do not contain an adequate written description of the inventions.  To succeed, Kinze must show by clear and convincing evidence that the specification fails to meet the law's requirements for written description of the invention.  In the patent application process, the applicant may keep the originally filed claims, or change the claims between the time the patent application is first filed and the time a patent is issued.  An applicant may amend the claims or add new claims. These changes may narrow or broaden the scope of the claims.  The written description requirement ensures that the issued claims correspond to the scope of the written description that was provided in the original application.

The test for the written description requirement requires an objective inquiry into the four corners of the patent from the perspective of a person of ordinary skill in the art.  To satisfy the written description requirement the patent, in and of itself, must describe an invention understandable to that skilled artisan and show that the inventors invented the invention actually claimed.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed.  The written description requirement is satisfied if a person having ordinary skill reading the original patent application would have recognized that it describes the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor actually possessed that full scope by the filing date of the original application.

The purpose of the written description requirement is to ensure that the scope of the patent does not overreach the scope of the inventor's contribution to the field of art as described in the patent. It ensures that the public receives meaningful disclosure in exchange for being excluded from practicing an invention.

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc. contained in the patent application. The full scope of a claim or any particular requirement in a claim need not be expressly disclosed in the original patent application if a person having ordinary skill in the field of technology of the patent at the time of filing would have understood that the full scope or missing requirement is in the written description in the patent application.

### 4.12   DEFINITENESS

The patent laws have requirements for the way in which patent claims are written.  Patent claims must be sufficiently clear that a person of ordinary skill in the field of the invention reading them is able to determine what the claims cover and what they do not cover.

Kinze contends that certain of the asserted claims of the '428 and '193 Patents are invalid because the language of the claims is indefinite.  Kinze has the burden of proving indefiniteness of a claim by clear and convincing evidence.

The amount of detail required for a claim to be definite depends on the particular invention, the prior art and the description of the invention contained in the patent.  A patent claim, when read along with the rest of the patent, must reasonably inform those skilled in the field of the invention what the patent claims cover.

Simply because some claim language may not be precise does not automatically render a claim invalid.  However, when a word or phrase of degree such as "substantially equal to" is used, we must determine whether the patent disclosure provides some standard for measuring that degree.  One must then determine whether one of ordinary skill in the art would understand what is covered when the claim is read in light of the disclosure.

If you find that Kinze has proven by clear and convincing evidence that any of these challenged claims of the '428 and '193 Patents are indefinite because a person of ordinary skill in the art would not understand what is, and what is not, covered by the claim, you must then find that that claim is invalid.

46

## 4.13   ENABLEMENT

Kinze contends that certain claims of the '428 patent and the '193 patent are invalid because the specification lacked an enabling disclosure. Kinze has the burden of proving non-enablement of a claim by clear and convincing evidence.

Patent law requires that the disclosure or written description of a patent be sufficiently detailed to enable those skilled in the art to make and use the full scope of the claimed invention. The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a full disclosure of how to carry out the claimed invention.

To meet this requirement, the patent disclosure must allow a person of ordinary skill in the art to practice the invention without undue experimentation. Because descriptions in patents are addressed to those skilled in the art to which the invention pertains, an applicant for a patent need not expressly include information that is commonly understood by persons skilled in the art. Moreover, the fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that the specification is not enabling. A specification is enabling so long as undue experimentation is not needed.

Factors to consider in determining whether a disclosure would require undue experimentation include testimony (including but not limited to expert opinion) and other evidence indicating:

(1)   the time and cost of any necessary experimentation;

(2)   how routine and necessary experimentation would be to those of ordinary skill in the art;

(3)   whether the '428 patent and/or '193 patent discloses specific working examples of the claimed invention;

47

(4)     whether the inventor attempted but failed to enable his invention in a commercial

product embodying the claimed invention;

(5)     the amount of guidance presented in the '428 patent and/or '193 patent;

(6)     the nature and predictability of the technical field of the invention;

(7)     the level of ordinary skill in the field; and

(8)     the scope of the claimed invention.

No one or more of these factors alone is dispositive.   Rather, you must make your

decision whether or not the degree of experimentation required is undue based upon all of the

evidence presented to you.  You should weigh these factors and determine whether or not, in the

context of the invention and the state of the art at the time of invention, a person having ordinary

skill would need to experiment unduly to make and use the full scope of the claimed invention.

5.   **UNENFORCEABILITY**

5.1   **INEQUITABLE CONDUCT**

Kinze contends that Case IH may not enforce the '428 and '193 patent against Kinze because certain individuals at Case IH engaged in inequitable conduct before the Patent Office during prosecution of the patents-in-suit.

Applicants for a patent have a duty to prosecute patent applications in the Patent Office with candor and good faith. This duty of candor and good faith extends to the inventors named on a patent application, the patent attorneys and patent agents involved in preparing and prosecuting the application, and every other person involved in a substantial way with the prosecution of the patent application. An intentional failure to meet this duty of candor and good faith is referred to as "inequitable conduct."

In this case, Kinze asserts that certain individuals involved in preparing or prosecuting the '428 or '193 patent application engaged in inequitable conduct before the Patent Office during prosecution of the patents-in-suit.

In order to prove inequitable conduct, Kinze must prove by clear and convincing evidence that a person having a duty of candor and good faith withheld or misrepresented information, or submitted false information, that was material to the examination of the application leading to the '193 and/or the' 428 patent, and that this individual or individuals acted with an intent to deceive or mislead the Patent Office.

## 5.2   MATERIALITY

In evaluating an allegation of inequitable conduct before the Patent and Trademark Office, you must first determine whether there was any withholding or misrepresentation of information and, if so, whether the information withheld or misrepresented was indeed material. Information or statements are material if they refute or are inconsistent with a position taken when opposing an argument made by the patent examiner that the invention was not patentable or when making an argument to the patent examiner that the invention was patentable. False information or statements may be considered material if they would (alone or in combination) falsely suggest that the applicant satisfied a patentability requirement.

Information is not material if it is cumulative or adds little information to what the examiner already knew. In order for the information withheld or misrepresented to be material, there must be a substantial likelihood that a reasonable patent examiner would have considered it important in deciding whether to issue either the '428 or '193 patents.

If you determine that there was a withholding or misrepresentation of information and that the information was material, then you must consider the element of intent. If, on the other hand, you find that Kinze failed to prove by clear and convincing evidence that an individual involved in preparing or prosecuting the '428 or '193 patent withheld or misrepresented any material information, then you must find that there was no inequitable conduct.

### 5.3    INTENT TO DECEIVE

If you determine that material information was withheld or misrepresented to the Patent and Trademark Office, you must next determine whether this was done with intent to deceive or mislead the Patent Examiner.    If the withholding or misrepresentation occurred through negligence, oversight, carelessness or an erroneous judgment, then there was no intent and no inequitable conduct.    Intent may be shown through direct evidence, such as documents or testimony about one's intent to deceive.   Intent may also be shown through indirect evidence or, in other words, it may be inferred from conduct.   However, intent requires that the person allegedly making false statements know they are false or allegedly withholding information they know is material.   Any such inference depends upon the totality of the circumstances, including the nature and level of culpability of the conduct and the absence or presence of affirmative evidence of good faith.

## 5.4    BALANCING OF MATERIALITY AND INTENT

If you find that Kinze has proven that an individual accused by Kinze intentionally withheld from or misrepresented material information to the Patent Office, you must then balance the degree of materiality of the information and the degree of intent to deceive or mislead the Patent Office to determine whether or not the evidence is sufficient to establish clearly and convincingly that there was inequitable conduct committed during the prosecution of the '428 or '193 patents  Where the materiality of the withheld or misrepresented information is high, the showing of intent needed to establish inequitable conduct is proportionally less. Likewise, when the showing of intent is high, the showing of materiality may be proportionally less.

## 6.   DAMAGES – GENERALLY

I will now instruct you on damages.  If you find that Kinze has infringed one or more valid asserted claims of the patents-in-suit, you must determine the amount of monetary damages to which Case IH is entitled.  By instructing you on damages, I do not suggest that one or the other party should prevail.  These instructions are provided to guide you on the calculation of damages in the event you find infringement of a valid patent claim and thus must address the damages issue.

The amount of damages must be adequate to compensate Case IH, which is seeking damages in the amount of a reasonable royalty.  In calculating the amount of damages, you must not include additional sums to punish the parties or to set an example.  You may award compensatory damages only for the loss that the patentee proves, by a preponderance of the evidence, was caused by Kinze's alleged infringement.

### 6.1    REASONABLE ROYALTY - DEFINITION

A reasonable royalty is the amount of money that would be agreed to in a hypothetical negotiation between Case IH and Kinze at the time when the infringing sales first began.

You must assume that both parties are willing participants in the negotiation. In addition, you should assume that Kinze and Case IH would consider the actual business environment at the time of the hypothetical negotiation. Thus, in considering the nature of this negotiation, the focus is on what the expectations of Case IH and Kinze would have been had they each voluntarily entered into an agreement at that time, apart from the present litigation and prior to any infringement by Kinze, and that the parties would have acted reasonably in their negotiations. However, you must assume that both parties believed the patent was valid and infringed. You must assume that Kinze was willing to take a license. You must also assume that Case IH was willing to grant a license.

## 6.2    DAMAGES – BURDEN OF PROOF

The plaintiff has the burden of proving damages by a preponderance of the evidence, and is entitled to all damages that can be proven with reasonable certainty. Reasonable certainty, however, does not require proof of damages with mathematical precision. Mere difficulty in ascertaining damages is not fatal to a party's right to recover. On the other hand, a party is not entitled to speculative damages; that is, you should not award any amount of loss that, although possible, is wholly remote or the result from mere conjecture.

### 6.3    WHEN DAMAGES BEGIN

For your purposes, in determining the amount of damages, if any, Case IH is entitled to recover, you should assess any such damages beginning on December 16, 2008.

### 6.4    ENTIRE MARKET VALUE RULE

Under the "entire market value" rule, a patent owner may recover damages based on the value of an entire apparatus or product containing several features, even though only one feature is patented, where the unpatented components function together with the patented components in some manner to produce a desired end product or result.   A patent owner may also recover damages under the entire market value rule where customer demand for the entire apparatus or product at issue lies with advantages that arise from the infringing component.   Where it is proven that the patent-related feature is the basis for customer demand, the entire market value rule  applies. This is the case even though the patented invention might be a small component of a much larger commercial product.   Evidence that demand for the entire products at issue lies with the advantages that arise from the claimed device satisfies the entire market value rule.   In addition, use of the entire market value also is appropriate when unpatented components function together with the patented component so as to produce a desired end product or result.

### 6.5    REASONABLE ROYALTY AS A MEASURE OF DAMAGES

Under the patent law, the patentee can obtain, as a measure of damages, no less than a reasonable royalty. Therefore, the Patent Act sets the floor for damages as a reasonable royalty. A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention. A reasonable royalty is the payment that would have resulted from a hypothetical negotiation between a patent holder and the infringer taking place just before the time when the infringing sales first began.

In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations. However, you must assume that both parties believed the patent was valid and infringed. In addition, you must assume that patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation, and not simply what either party would have preferred. In determining the royalty that would have resulted from the hypothetical negotiation you may consider real world facts, including the following, to the extent they are helpful to you:

1.   Any royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty;

2.   The rates paid by the licensee for the use of other patents comparable to the Patents-in-Suit;

3.   The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

4.     The licensor's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly;

5.     The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business;

6.     The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such derivative or convoyed sales;

7.     The duration of the patent and the term of the license;

8.     The established profitability of the product made under the patent; its commercial success; and its current popularity;

9.     The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results;

10.     The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention;

11.     The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use;

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13.    The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the accused infringer;

14.    The opinion testimony of qualified experts;

15.    The amount that a licensor (such as the patentee) and a licensee (such as the accused infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee-who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention-would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license; and

16.    Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating.

## 6.6    INTEREST

None of the parties' calculations include interest.  Therefore, in arriving at your damages calculation, you should not consider interest in any way because it is the function of the Court to award interest.

## 7.   DELIBERATION AND VERDICT

### 7.1   INTRODUCTION

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. After you hear closing arguments of counsel, you will return to the jury room and begin your deliberations. Now let me finish by explaining some things about your deliberation in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the Jury Officer, or to me, or to anyone else except each other about the case. The first thing you should do is select a foreperson. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the Jury Officer. The Officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.

One more thing about messages. Do not ever write down or tell anyone how you stand on your vote. For example, do not ever write down or tell anyone that you are split 4-4, or 6-2, or whatever the vote happens to be. That should stay secret until you are finished.

## 7.2   DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach a unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. It is your duty, as jurors, to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so without violence to your individual judgment.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that -- your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

A form of verdict has been prepared for you. You will take this form to the jury room and, when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what

verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

### 7.3    COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during the trial was meant to influence your decision in any way.  You must decide the case yourself based on the evidence presented.