IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CNH AMERICA LLC, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | C.A. No. 08-945-GMS |
| ) | |
| KINZE MANUFACTURING, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

## I.  INTRODUCTION

In this patent infringement action, plaintiffs CNH America LLC and Blue Leaf I.P., Inc.

(collectively, "Case" or "the plaintiffs") allege that agricultural equipment manufactured by

defendant Kinze Manufacturing Inc. ("Kinze") infringes the asserted claims of the patents-in-

suit.[1]  (D.I. 1.)  The court held a nine-day jury trial in this matter on January 31 through February

10, 2011.  (D.I. 326-333.)  At trial, both parties properly moved for judgment as a matter of law

("JMOL") on a number of grounds pursuant to Rule 50(a) of the Federal Rules of Civil

Procedure (see Tr. 1812-52), and the court denied the parties' motions.[2]  (See Tr. 1856.)

On February 11, 2011, the jury returned a unanimous verdict in favor of Kinze on the

issue of infringement with respect to all claims.  (See D.I. 303 at 2.)  The jury further found that

all the asserted claims were invalid due to anticipation, and that all but two of the asserted claims

were invalid due to obviousness.  (Id. at 5-6.)  The jury also found that the asserted claims were

---

[1] The patents-in-suit are U.S. Patent Nos. 5,842,428 (the "'428 Patent") and 6,109,193 (the "'193 Patent"). The United States Patent and Trademark Office ("PTO") has issued reexamination certificates for both patents-in-suit.  (See PTX 2 & PTX 6.)

[2] The court had earlier granted Kinze's Rule 50 motion to limit pre-suit damages.  (See D.I. 293 & 294; Tr. 1147-49.)

not invalid due to indefiniteness (id. at 3), lack of written description (id. at 7), or enablement (id. at 8), and that claims 18 and 207 of the '428 Patent were not obvious (id. at 6). The jury issued an advisory verdict in favor of Case on inequitable conduct, finding that neither the materiality nor the intent prongs of inequitable conduct were satisfied with respect to the patents-in-suit. (See id. at 9.) The court entered judgment on the verdict on February 24, 2011. (D.I. 306.) Presently before the court are the parties' post-trial motions.[3] Having considered the entire record in this case, the substantial evidence in the record, the parties' post-trial submissions, and the applicable law, the court will deny all the parties' post-trial motions. The court's reasoning follows.

## II. BACKGROUND OF THE TECHNOLOGY

The patents-in-suit relate to vacuum seed metering technology used in agricultural seed planters. The seed meters described in the patents-in-suit include a rotatable disc separating a seed chamber from a vacuum chamber. At trial, the main focus of both the parties' invalidity and infringement arguments focused on the requirement, appearing in one form or another in each of the asserted claims, that the metering device contain an "opening" or "openings" "proximate to the seed discharge area" that "promote the release of seeds" from the disc.

## III. STANDARD OF REVIEW

Case's motions assert that is entitled to judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure or, alternatively, that it is entitled to a new trial pursuant to Rule 59 or Rule 60(b).

---

[3] These motions are Kinze's motion for attorney's fees pursuant to 35 U.S.C. § 285 (D.I. 312); Kinze's renewed JMOL motion (D.I. 327); and Case's renewed motion for JMOL or, alternatively, for a new trial (D.I. 328). The parties also filed post-trial briefs on the issue of inequitable conduct. (See D.I. 335, D.I. 337, D.I. 350, & D.I. 352.)

## A.    Renewed JMOL Motions

To prevail on a renewed motion for judgment as a matter of law following a jury trial and verdict, the moving party "'must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings.'" *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (quoting *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984)). "Substantial evidence" is defined as "such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp.*, 732 F.2d at 893.

The court should only grant the motion "if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) (citing *Wittekamp v. Gulf Western Inc.*, 991 F.2d 1137, 1141 (3d Cir. 1993)). "In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Lightning Lube*, 4 F.3d at 1166 (citing *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 190 (3d Cir. 1992)). Rather, the court must resolve all conflicts of evidence in favor of the non-movant. *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991); *Perkin-Elmer Corp.*, 732 F.2d at 893.

"The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Lightning Lube*, 4 F.3d at 1166 (quoting *Patzig v. O'Neil*, 577 F.2d

841, 846 (3d Cir. 1978)). In conducting such an analysis, "the court may not determine the credibility of the witnesses nor 'substitute its choice for that of the jury between conflicting elements of the evidence.'" *Syngenta Seeds, Inc. v. Monsanto Co.*, 409 F. Supp. 2d 536, 539 (D. Del. 2005) (quoting *Perkin-Elmer Corp.*, 732 F.2d at 893).

## B. New Trial

Pursuant to Federal Rule of Civil Procedure 59, a court may grant a new trial "for any of the reasons for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The decision to grant or deny a new trial is within the sound discretion of the trial court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). In making this determination, the trial judge should consider the overall setting of the trial, the character of the evidence, and the complexity or simplicity of the legal principles which the jury had to apply to the facts. *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 89 (3d Cir. 1960). Unlike the standard for determining judgment as a matter of law, the court need not view the evidence in the light most favorable to the verdict winner. *Allied Chem. Corp.*, 449 U.S. at 36. A court should grant a new trial in a jury case, however, only if "the verdict was against the weight of the evidence . . . [and] a miscarriage of justice would result if the verdict were to stand." *Williamson v. Conrail*, 926 F.2d 1344, 1352 (3d Cir. 1991).

Similarly, Federal Rule of Civil Procedure 60 permits a court to relieve a party from final judgment and even grant a new trial due to "fraud . . . , misrepresentation, or other misconduct by an adverse party." Fed. R. Civ. P. 60(b)(3); *see Bethel v. McAllister Bros., Inc.*, 81 F.3d 376, 384-85 (3d Cir. 1996). In order to prevail on a Rule 60 motion, the movant must show that the adverse party engaged in fraud or other misconduct, and this conduct prevented the movant from

4

fully and fairly presenting his case. *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983).

Additionally, the movant must demonstrate that the fraud or misrepresentation was material to

the outcome of the case. *Bandai Am. Inc. v. Bally Midway Mfg. Co.*, 775 F.2d 70, 73 (3d Cir.

1985). Fraud or misrepresentation must be proved by clear and convincing evidence. *See Brown*

*v. Pennsylvania R.R. Co.*, 282 F.2d 522, 527 (3d Cir. 1960).

## IV.    DISCUSSION

### A.    Infringement

Case first moves for judgment as a matter of law or, alternatively, a new trial on

infringement.

#### 1.    Expert Testimony

In its motion, Case asserts that Kinze "failed to present sufficient evidence to rebut Case

IH's infringement proof." (D.I. 331 at 3.) Case repeatedly used adjectives such as "uncontested"

(D.I. 331 at i, 5), "uncontroverted" (id. at 3), and "unchallenged" (id. at 6) to describe evidence

that it presented on the issue of infringement.   The use of such terms to describe Case's

infringement proof is curious given Kinze's lengthy and, at times, terse cross-examination of

Case's infringement expert, Dr. Caulfield (see Tr. 652-703), and given the wide-ranging

testimony of Dr. Stein (Tr. 1316-1481), Kinze's expert on infringement.   For instance, Case

asserted in its reply brief that Kinze "never questioned" the parameters or conditions of Dr.

Caulfield's sunflower and flat corn tests.  (See D.I. 356 at 2.)  During the cross-examination of

Dr. Caulfield, however, Kinze's counsel brought out the fact that Dr. Caulfield's tests were

performed in a laboratory rather than in a field (see Tr. 682-85), and that Dr. Caulfield never

tested the accused opening by itself (Tr. 659).  Dr. Stein later criticized Dr. Caulfield's tests on

5

the same bases. (Tr. 1377-78.) Kinze also noted that Dr. Caulfield's tests using flat corn resulted in differences of less than a tenth of an inch (see Tr. 683-84), which Dr. Stein testified would not be sufficient to have an effect on yield. (Tr. 1379-80.) Case may believe that Kinze's attempts to cast doubt on Dr. Caulfield's tests were not persuasive, but his tests hardly went unquestioned.[4]

Similarly, Case vehemently asserts that Dr. Stein's testing of round corn proves "absolutely nothing" about other types of seeds and asserts that "Kinze avoided testing flat corn and sunflower seeds, knowing the results would be undesirable." (D.I. 331 at 7.) The court is not certain of the logic underlying this argument, and Case's brief provides no clarification beyond an assertion that the round corn testing results might have differed with "irregularly shaped and light seeds, such as sunflower seeds." (See id. at 6-7.) But it rarely is practical for experts to conduct – much less present at trial – every type of potentially relevant test regarding the subject matter in dispute. Indeed, Case itself only presented evidence from tests of three types of seeds, even though the specifications of the patents-in-suit (see, e.g., '428 Patent, col. 1, ll. 41-67), the testimony of witnesses at trial (see, e.g., Tr. 200-203), and Case's own briefing (see, e.g., D.I. 331 at 2 (stating that subject matter claimed by the patents-in-suit "improve[s] seed metering accuracy for a wide variety of seeds") make clear that the metering devices must be able to plant a much wider variety of seeds of different shapes, sizes, and weights. Assuming, as Case argues, that Kinze's tests on round corn prove "absolutely nothing" about flat corn or sunflower seeds, Case does not explain how its additional tests on flat corn and sunflower seeds are generalizable to soybeans, peanuts, or cotton.

---

[4] Indeed, throughout its post-trial briefing, Case seemed to "talk past" Kinze by either 1) recapitulating the evidence Case presented at trial and declaring those arguments undisputed; or 2) insisting that Kinze's arguments were improper or untimely, and thus should have been excluded by the court and/or disregarded by the jury.

Each party is free to present and highlight the test results most favorable to its case and allow the opposing party to attempt to bring out any weaknesses in the tests through its cross-examinations and case-in-chief. It is then up to the jury to determine which party's tests, viewed in light of other evidence presented at trial, were most persuasive. This familiar pattern, which lies at the core of the classic "battle of experts," is precisely what happened in this case. Dr. Caulfield presented, and was cross-examined on, the conditions and results of his laboratory tests on flat corn, round corn, and sunflower seeds. Dr. Stein then presented evidence from his tests on round corn, which were conducted on five acres of farmland in Iowa. Dr. Stein asserted that the accused products fell outside the scope of the asserted claims in a number of ways, for instance by testifying that neither the lower vents nor the open sector in the EdgeVac promoted release of the seeds. (E.g., Tr. 1366, 1375.) Neither side presented infringement evidence that went unchallenged. The jury was free to accept or reject the testimony of each witness in whole or in part. Certainly, the evidence presented was sufficient to support the jury's verdict of non-infringement.

### 2. The '548 Patent

Case also argues that "Kinze's own documents admit infringement." The court need not dwell long on this argument, since the "documents" in question are a patent (U.S. Patent No. 7,093,548, hereinafter "the '548 Patent") issued to Kinze and a letter written by one of Kinze's patent attorneys while drafting the '548 Patent's application. Case asserts that the "'548 Patent provides a technically accurate description" of the accused product. (See D.I. 356 at 3.) Even if this were true, a patentee must show how the accused product itself infringes the patent-in-suit; the court is not aware of any authority – and Case cites none – holding that a "description" of a

product can infringe a patent.

In any case, the documents in question contain nothing that constitutes an "admission" of infringement. The '548 Patent was never construed by the court and never uses the relevant claim language from the patents-in-suit. (See, e.g, Tr. 696.) Even if the court were required to examine the content of the '548 Patent, which it is not, the portions of the '548 Patent cited by Case say nothing that "admits" that the described invention (much less the EdgeVac itself) contains openings that meet the asserted claim's requirement of proximate opening(s) to promote release of seeds. With respect to the letter written by a Kinze attorney, Case's opening brief does not even specify what portions of the document constitute an "admission" of infringement.[5] The court therefore rejects Case's argument that these documents constitute an admission of infringement, and denies its motion for JMOL or a new trial on the basis of the cited documents.

### 3.    Presentation of "Smoke Test" Video

Case further argues that it is entitled to a new trial on infringement because, it asserts, Kinze presented a "smoke test" video that was not disclosed prior to trial. (See D.I. 331 at 10-16.) Kinze responds that the smoke test video was merely demonstrative and that, in any case, the smoke tests were sufficiently disclosed in Dr. Stein's expert report, which also included videos showing smoke tests. The court agrees with Kinze.

The court viewed both videos after trial. The production values (most notably the use of colored smoke) of the video shown at trial were higher than those included with Dr. Stein's original report, but this is neither surprising nor prejudicial. The key characteristics of the videos

---

[5] Case's reply brief criticizes Kinze for not addressing the Hill letter, despite the fact that Case's opening brief does not mention the letter at all except to state in a conclusory fashion that the letter "admits" infringement. Case's reply brief quotes the last few words of the letter, but does not explain how those words constitute an admission of infringement. Here too, Case apparently believes the truth of its arguments to be so self-evident that they require no explanation or supporting reasoning.

remained the same; both illustrated Dr. Stein's assertions regarding the movement of air inside the meter (*i.e.*, that the air did not flow into the seed discharge area). (*See* Stein Declaration Regarding Non-Infringement at 20-30; Tr. 1333-43.) Moreover, even if the court were to accept Case's arguments that the video represented undisclosed tests *and* that the jury considered the video as substantive evidence rather than as a mere illustration, the court would not grant a new trial. The court sees no basis for concluding that the video clips – which were less than twenty seconds in length – were the "focal point of Kinze's non-infringement arguments" presented over the course of the nine-day trial, as Case argues. (See D.I. 331 at 16.) The court has seen instances where parties have attempted to "sandbag" their adversaries at trial with previously-undisclosed evidence and theories, leading the court to exclude the disputed evidence. The presentation of this brief video clip is hardly an example of such tactics, Case's cries to the contrary notwithstanding. The court therefore stands by its ruling that Case was not prejudiced by the presentation of the video, and will deny its motion for a new trial on that basis.

### 4. Kinze's Alleged Use of "Practicing the Prior Art" Defense

Case also asserts that Kinze advanced an improper "practicing the prior art" defense at trial.[6] The court disagrees. Case only cites two instances where, it alleges, Kinze advanced this supposed defense – one statement by a Kinze witness, and one line in the closing argument by

---

[6] In its brief, Case correctly notes that it filed a motion in limine addressing this issue. (See D.I. 331 at 9.) But the court did not, as the phrasing of Case's brief suggests, simply deny the motion outright in an oral order that appeared on the docket. Rather, the court heard argument on the motion at the pretrial conference, and denied the motion while explicitly giving Case leave to object if it believed Kinze was pursuing the strategy at trial. This decision follows this court's longstanding practice of dealing with evidentiary issues in real time when possible so that the court does not needlessly expend time and resources on issues that may ultimately never arise at trial. Indeed, shortly after the trial in this matter concluded, the court amended its Pretrial Order form (available at http://www.ded.uscourts.gov/GMS/Forms/Final_Pretrial_Order_Rev02-08-11.pdf) to end motion-in-limine practice altogether. The court remains confident that its decision not to make a final decision on Case's objection *in limine* was correct because, as explained in the main text, Kinze never attempted at trial to use the presence of elements in prior art as a defense to literal infringement.

Kinze's attorney. Several days passed between each of these brief statements, and neither statement referenced the other. These features are hardly the hallmarks of a coordinated effort to advance an impermissible legal theory.

Moreover, even a cursory examination of the transcript reveals that neither statement used prior art as a defense to literal infringement. The first statement was made by Mark Eben, a former Kinze engineer who worked on the development of the EdgeVac, as part of his explanation on why he and the rest of the EdgeVac development team *believed* that the EdgeVac would not infringe. (See Tr. 1063-64.) This testimony was highly relevant to the issue of willfulness, which Case was asserting against Kinze. Case did not object to Mr. Eben's response at the time of trial.[7] The court's instructions at the close of trial made clear the standards for both literal infringement and willfulness. Under these circumstances, the probative value of Mr. Eben's statement with respect to willfulness far outweighs any risk of prejudice arising from the slight possibility that the jury might misuse Mr. Eben's testimony.

The second statement was made by Kinze's attorney during his closing argument, four days of trial and six calendar days after Mr. Eben's statement. The statement was made during his arguments on obviousness rather than non-infringement, to support Kinze's assertion that Case's supposed innovations followed obviously from "basic physics," a term that Kinze used throughout its obviousness arguments:

> So one of the things that is accused on our product is DE in the open sector. DE, as you know, cuts off the vacuum so that the seed can fall. Well, the fact of the matter is you can't patent basic concepts in physics

---

[7] The section of Case's opening brief discussing this issue notes that the court "generally voiced its concern regarding the intermixing of multiple issues without clearly identifying which issue the testimony is directed to." (D.I. 331 at 9-10.) Case neglects to mention, however, that the court expressed this concern with respect to a different question asked of a different witness on a different day of trial regarding a different issue. The court – like Case – never expressed concern at trial that the jury might misuse Mr. Eben's statement as evidence of infringement.

10

like that. You are supposed to consider the scope and content of the prior art when you're back there thinking about what's obvious. The prior art makes it clear . . . Gaspardo, Nodet, Monosem, they all do it. It's basic operation of basic physics. Same thing.

Remember, I just talked about this. The dead air cuts off vacuum, introduces atmosphere, seeds release. Basic physics.

Same thing with Deere, it's an open cavity with dead air. The air gets in from all the openings around it.

EdgeVac does it the same way. Why? Because it's basic physics. It's obvious. If you need to release a seed from a disc, you have to cut off the vacuum. If you don't cut off the vacuum, it's not going to fall off the disc.

(Tr. 2025-26.) It is highly unlikely that the jury linked this statement with Mr. Eben's days-earlier statement. Indeed, given the context of each statement, the court does not perceive (nor does Case explain) why the jurors would have seized on either of these statements in their analysis of infringement, much less why they would have linked them with each other. At the very least, these two statements are far from sufficient to support Case's assertion that Kinze attempted to advance an improper "practicing the prior art" defense at trial.

For these reasons, the court will deny Case's motion for judgment as a matter of law or, alternatively, for a new trial on the issue of infringement.

## B.    Invalidity

### 1.    Anticipation

At trial, Kinze asserted that three separate references (hereinafter "Krause,"[8] "Deere," and "Monosem") anticipated the asserted claims of the patents-in-suit. The central point of dispute between the parties was whether these prior art references anticipated the "opening to

---

[8] Two separate "Krause" references were discussed at trial, which the parties referred to as the "Krause one-hole meter" and "Krause two-hole meter." The "Krause" reference discussed in this section of the court's opinion corresponds to the "one-hole" meter.

11

promote release from the disc" requirement that appears, in one form another, in every asserted claim. Case argues that none of the three references anticipated the patents-in-suit, though for different reasons. With respect to Deere, Case argues that there are no *openings* at all. With respect to Krause, Case argues that the opening does not *promote release* from the disc. Finally, with respect to Monosem "configuration B,"[9] Case argues that the openings cannot promote release *from the disc* because, it asserts, "the actual release does not occur until the finger wheel seed disc rotates to the 5:30 location outside the meter housing." (D.I. 331 at 21.) The court rejects each of these arguments, and finds that the evidence at trial was sufficient to support the jury's verdict of anticipation with respect to each of the references.

### a. Deere

Case asserts that Deere cannot anticipate because it has no "openings" in the shell at all; rather, Case argues, it merely contains "two areas where the surface of the shell rim is recessed from the cover of the meter . . . ." (D.I. 331 at 19; see also D.I. 356 at 6-7.) Case's argument seems to imply that "opening" as used in the asserted claims is limited to a completely enclosed aperture or "hole." This is an argument that should have been made during claim construction, but Case did not ask the court to construe "opening" during the *Markman* phase. (See D.I. 121 (Claim Construction Chart).) The court will not now impose additional limitations on the meaning of "opening" and test the jury's verdict against that narrower construction.[10]

---

[9] Since the court finds that the evidence is sufficient to support a verdict of anticipation for "Configuration B," it need not reach the issue of anticipation with respect to "Configuration A." (See D.I. 331 at 20; D.I. 346 at 20.)

[10] Case's argument that the "Deere meter" was the "subject of reexamination proceedings" is unavailing. The PTO considered the Lundie patent, not the Deere meter, during reexamination. As with its argument regarding Kinze's '548 Patent, *see supra* Section IV.A.2, Case conflates a product with a patent that Case asserts is an embodiment of that product.

### b. Krause

Kinze asserted at trial that Krause anticipates all of the asserted claims except claims 17 and 18 of the '428 Patent.[11] Case's post-trial brief only asserts one basis for distinguishing the Krause reference from the remaining asserted claims – that the Krause reference does not contain any openings that *promote* release of the seed. The court concludes that Kinze presented sufficient evidence at trial to support a conclusion that the Krause reference anticipates this limitation. For example, Jerome Fink, a project engineer for Krause, testified by deposition that the Krause meter in question contains two holes that "allow[] equalization of atmospheric pressure into the chamber," which is important for "more consistent release of the seed." (Tr. 1169-70.) Case may not have found Fink's testimony "credible" (see D.I. 356 at 7), but determinations of credibility and weight are the province of the jury.

### c. Monosem

At trial, Kinze presented evidence on two different configurations of the Monosem meter for the purposes of anticipation. Case asserts that the plugged" configuration or "configuration B," on which the parties' post-trial briefing focuses most heavily, cannot anticipate the asserted claims. Case argues that while the "openings" are positioned at approximately the "3 o'clock" ("3:00") position on the meter, "the actual release from the disc does not occur until the finger wheel seed disc rotates to the 5:30 location outside the meter housing." (D.I. 331 at 21.) Rather, Case asserts, "the seed will fall from the disc aperture at 3:00 and land on a fin of the finger wheel, which will then carry the seed to be discharged from the meter as it exits the housing at the 5:30 location." (Id. at 20-21.)

---

[11] The court thus need not address Case's arguments concerning the "plurality" of openings requirement that appears in claim 18 of the '428 Patent.

As Kinze points out, however, Case's argument seems to assume that "release from the disc" means that the seed is in freefall from the moment it is released from the vacuum until the moment it exits the meter entirely – a limitation on the meaning of "release" that the court never imposed and was never asked to impose during claim construction. Similarly, Case's argument seems to imply that "to promote . . . release" means "to directly and immediately cause release;" this too is a limitation that should have been proposed, if at all, during the claim construction process. In the absence of such narrowing limitations, the evidence plainly was sufficient to support a finding of anticipation with respect to the "plugged" Monosem configuration. For example, Kinze presented evidence that the plugged configuration of the Monosem meter released the seed from the vacuum at 3:00. (See Tr. 1400-01; see also DTX-2022.) The jury could have reasonably concluded that this release from the vacuum met the requirement that the openings promote release from the disc. Indeed, Case's own witness agreed on cross-examination with the statement that "promote the release of seeds" in the context of the patents-in-suit means "to help the seeds get released from the vacuum on the vacuum seed meter." (See Tr. 1771:25-1772:13.)

For these reasons, the court concludes that the evidence at trial was sufficient to support a verdict that the plugged configuration of Monosem anticipated the asserted claims. The court therefore need not address whether "Configuration A" anticipates the asserted claims. As for Case's argument that Kinze advanced an improper "hybrid" Monosem configuration argument for the purposes of direct infringement, the court disagrees.[12] As with Case's arguments on

_____

[12] Notably, Case provided no citation to the record whatsoever to support its assertion that "Kinze argued that Configurations A and B may be combined for purposes of proving anticipation." (See D.I. 331 at 21.)

Kinze's supposed "practicing the prior art" defense to infringement,[13] Case's briefs simply lifted a few isolated statements from the trial transcript out of context (specifically, Dr. Stein's testimony regarding the disclosure of Ribouleau '917 Patent in the prosecution history, see Tr. 1419-22) and portrayed it as a full-throated theory of anticipation. In any case, since the evidence supports a conclusion that the plugged configuration anticipates the asserted claims, there is no need to consider whether a "hybrid" configuration is anticipatory.

### 2.    Obviousness

As with infringement, Case's post-trial arguments "talk past" Kinze by ignoring most of the evidence that Kinze presented at trial and declaring the remaining evidence improper. Case asserts that "[t]he entirety of Kinze's obviousness analysis was a computer animation" that, according to Case, "allow[ed] Kinze to combine individual parts from a wide variety of references without any rationale for combination." (D.I. 331 at 22.) An unwary reader of Case's brief thus would think that Kinze's obviousness proof lasted only a few minutes and consisted of a single computer animation – an animation that Case asserts was legally impermissible. Beyond its attack on Dr. Stein's demonstrative animation, Case does not acknowledge *any* evidence presented by Kinze at trial on the issue of obviousness, nor does it specify in either of its briefs which elements of the asserted claims Dr. Stein failed to address.

The court has neither the time, the inclination, nor the responsibility to examine the record *de novo* and guess which elements Case believes were missing from Kinze's obviousness proof. For the purposes of this motion, it suffices to note that Dr. Stein testified, at some length, as to how the Monosem, Deere, and Krause references each disclosed the elements of the asserted claims for the purposes of anticipation. (See Tr. 1408-63.) He then testified, as Kinze

---

[13] See section IV.A.4, *supra*.

notes, "[f]or each combination or change made to the prior art . . . what might motivate the change and why it would be obvious given the purported problem." (See D.I. 346 at 23; Tr. 1468-77.) Perhaps, as Kinze suggests, Case's motion is simply a rehash of its pre-trial motion *in limine* (see D.I. 221 at 4-5) and in-trial objection (see Tr. 1463-68) that Dr. Stein was required to perform element-by-element analysis for obviousness even after he went through every element of every claim in the Monosem, Krause, and Deere meters independently for the purposes of anticipation. Case might have preferred it if Kinze were forced to cover the same ground twice during its invalidity arguments, but such a process would be a waste of trial time.

Moreover, to the extent that Case asserts that Dr. Stein's expert report was not sufficiently specific in disclosing his opinion as to the eight claims ultimately asserted at trial, that is not surprising given that there were more than 280 asserted claims at the time the expert reports were prepared. (See, e.g., Pretrial Conference Transcript at 21; Trial Tr. 1464.) It was only after the reports were filed that Case limited its asserted claims to the eight that ultimately went to trial. (See sidebar discussion at Trial Tr. 1463-68.) Against that background, Case can hardly blame Dr. Stein for failing to be sufficiently specific in his analysis with respect to the tiny subset of claims that Case ultimately chose to assert at trial. Had Case narrowed its claims to the eight asserted before Dr. Stein prepared his report, the court might have at least been sympathetic to Case's claim of unfair surprise. Given the way events actually unfolded, however, Case's effort to disqualify Dr. Stein's obviousness opinion is unavailing.

### 3.    "Inconsistent" Verdicts

Finally, Case asserts that it is entitled to a new trial because portions of the jury's verdict were fundamentally inconsistent. Specifically, Case asserts that there is no way to reconcile 1)

the jury's verdict of anticipation as to claims 18 and 207 of the '428 Patent with its verdict of non-obviousness as to the same claims; or 2) the jury's verdict of anticipation with respect to *all* the asserted claims with its advisory verdict of non-materiality on the issue of inequitable conduct. The court rejects both arguments.

With respect to the argument that the jury's obviousness and anticipation verdicts were inconsistent, Case's opening brief is less than one page in length, almost entirely devoid of legal reasoning, and completely devoid of analysis with respect to the evidence presented at trial.[14] (See D.I. 331 at 29-30.) Case's argument boils down to two conclusory – and legally meritless – assertions: 1) "A claim simply cannot be anticipated and not obvious," a proposition for which Case cites two CCPA cases; and 2) "[i]f anticipation is the epitome of obviousness," a proposition purportedly lifted from one of the CCPA cases, "a claim that is anticipated necessarily 'as a whole, would have been obvious to a person of ordinary skill in the art at the time of the invention,' as the verdict form states." (See D.I. 331 at 30.)

In reality, the Federal Circuit has stated in clear terms that "it is not necessarily true that a verdict of nonobviousness forecloses anticipation," *Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1363-64 (Fed. Cir. 2008), Case's categorical assertion to the contrary notwithstanding. As Kinze notes, Case's briefs do not provide a single precedent where a new trial was allowed merely because claims were found anticipated but not obvious. The CCPA case that Case cited for the "epitome of obviousness" language was referring to a complete written description in a prior patent application under 102(e), not to anticipation generally. *See In re Kalm*, 378 F.2d 959, 962 (CCPA 1967). In its reply brief, Case attempted to distinguish

---

[14] By contrast, Case devoted six pages of its brief to challenging Kinze's presentation of the brief "smoke test" video clip. *See* section IV.A.3, *supra*; D.I. 331 at 10-16.

*Cohesive*, but still provided no case that stands for the sweeping propositions that Case urges this court to adopt. (See D.I. 356 at 9-10.)

Perhaps Case's failed to provide meaningful analysis or reasoning on this issue as part of a strategy to hold those arguments in reserve for use on appeal. Whatever the reason, it has neither cited pertinent case law on the issue nor provided even a scintilla of factual analysis as to why the verdicts on the two specific claims in question are irreconcilable. It is not this court's responsibility to guess at the substance of Case's reasoning or to make arguments on Case's behalf. As Kinze correctly notes:

> Case IH never tries to explain why claims 18 and 207 could not be found anticipated yet not obvious, analyzing the facts under the appropriate, and distinct, legal standards applicable to each issue. Instead, it asks the Court to leap directly to the conclusion that the jury did not do its job properly. But that is the last conclusion that should be drawn only after all possibilities have been eliminated. . . .
> While Kinze could spend numerous pages speculating why the jury could have logically found claims 18 and 207 non-obvious yet anticipated, it was Case IH's burden to show that the findings cannot be reconciled under any reasonable view of the evidence when considered independently and under the appropriate legal standards.

(D.I. 346 at 29.) Case's briefing on this issue does not even come close to satisfying that burden.[15]

As to whether the jury's anticipation verdict is inconsistent with the materiality findings implicit in its inequitable conduct advisory verdict,[16] the court will also deny Case's motion for a

---

[15] Moreover, in cases where a party asserts that a jury verdict is inconsistent, the Federal Circuit reviews the allegedly inconsistent verdicts under the law of the regional circuit in which the district court sits. *See, e.g.*, *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1343 (Fed. Cir. 2009); *Allen Organ Co. v. Kimball Int'l, Inc.*, 839 F.2d 1556, 1563 (Fed. Cir. 1988) ("The issue of inconsistent jury findings or verdicts is not unique to patent law. In such procedural matters we apply the discernible law of the forum . . . ."). The Third Circuit rejects resolving an inconsistency by "directing a judgment notwithstanding the jury's verdict on one claim on the sole ground that it was inconsistent with the jury's verdict on another claim." *Monaco v. City of Camden*, 366 F. App'x. 330, 331-32 (3d Cir. 2010) (*citing Mosley v. Wilson*, 102 F.3d 85, 91 (3d Cir.1996)).

[16] Case also asserts that the jury's anticipation verdict is inconsistent with the jury's finding that "the

new trial. The verdict form merely asked the jury whether Kinze has proven by clear and convincing evidence that "an individual or individuals involved in preparing or prosecuting the '428 or '193 patents withheld information from or made misrepresentations to the Patent Office that was material to the subject matter being claimed?" This interrogatory – to which Case made no objection at trial[17] – simply does not permit a conclusion that the jury's verdict was inherently inconsistent. Kinze offered three different prior art references (Krause "one-hole," Monosem, and Deere) on the issue of anticipation. The jury may simply have found that the Deere reference – which was not part of Kinze's inequitable conduct case – anticipated all the asserted claims.

Alternatively, the jury may have found that the inventors sufficiently disclosed the Monosem, and thus did not "withhold" any material information. As noted in Kinze's brief:

> [T]he jury might have believed, as Case IH repeatedly argued, that the duty to disclose all material information for the '428 Patent was satisfied by the Ribouleau Patent, Lundie Patent, or others, which, (even if accurate) would have no bearing on anticipation. (See, e.g., Trial Tr. 1959 ("Deere . . . more relevant")). It may have believed that the missing pages absent from the '193 information disclosure were no more relevant than the pages that were submitted, also as Case IH repeatedly argued. (Id.; id. at 2039). Or it may have believed that no "individual or individuals" actively "withheld" any Monosem information (leaving aside the intent issue entirely), again, as Case IH argued. Kinze would respectfully disagree with any of those conclusions, and would ask the Court to reach different ones, but they are exactly the conclusions Case IH asked the jury to reach.

(D.I. 346 at 30.) The court therefore will deny Case's motion for a new trial.

---

Krause 'two-hole' seed cup is not prior art to claim 18 of the '428 Patent." Case provided absolutely no explanation or reasoning for this assertion beyond those 17 quoted words. Here too, the court will not guess as to Case's arguments, and will instead simply deny Case's motion on this point without further comment.

[17] See D.I. 300 at 16.

## C.     Kinze's Motions

Kinze filed two post-trial motions that remain pending: A motion for attorney's fees (D.I. 312) and a motion for JMOL on the invalidity issues on which the jury found in favor of Case (D.I. 327.) The court will deny both motions. The court will deny Kinze's post-trial JMOL motions without ruling on their substance. Since the jury found all of the asserted claims to be invalid due to anticipation, the scope of the court's judgment would not change even if the court were to rule in favor of Kinze on the remaining invalidity issues. Under these circumstances, the Federal Circuit has made clear that it will not entertain a cross-appeal, in part because accepting such an appeal would "unnecessarily expand[] the amount of briefing." *Bailey v. Dart Container Corp.*, 292 F.3d 1360, 1362 (Fed. Cir. 2002).[18] As the Federal Circuit recently stated:

> Our precedent consistently warns against the improper use of a cross-appeal to reach issues that do not otherwise expand the scope of the judgment. A cross-appeal may only be filed "when a party seeks to enlarge its own rights under the judgment or to lessen the rights of its adversary under the judgment."

*Aventis Pharma v. Hospira Inc., et al.*, 637 F.3d 1341, 1343 (Fed. Cir. 2011). The court finds this reasoning equally persuasive with respect to post-trial motions such as Kinze's, and thus will deny Kinze's renewed JMOL motion without further comment.

With respect to Kinze's motion for attorney's fees, the court does not find this case to be exceptional by clear and convincing evidence as required by 35 U.S.C. § 285, and therefore will deny Kinze's motion. In deciding whether to award attorney's fees, the court must undertake a two-step inquiry. *Interspiro USA, Inc. v. Figgie Intern. Inc.*, 18 F.3d 927, 933 (Fed. Cir. 1994). First, the court "must determine whether there is clear and convincing evidence that the case is 'exceptional.'" *Id.* (quotation omitted). Second, the court must determine whether "an award of

---

[18] If the judgment is reversed or vacated on appeal, Kinze may renew their JMOL motions.

attorney fees to the prevailing party is warranted." *Id.* Exceptional cases include: "inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement." *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002) (citation omitted).

An award of attorney fees under § 285 is not intended to be an "ordinary thing in patent cases," and should be limited to circumstances in which it is necessary to prevent "a gross injustice" or bad faith litigation. *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329 (Fed. Cir. 2003); *see also Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369, 1375 (Fed. Cir. 2001) (affirming an award of attorney fees under § 285 for the "extreme litigation misconduct" of falsifying evidence); *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547 (Fed. Cir. 1989) (affirming an award under § 285 following repeated violations of a permanent injunction and a district court finding of a "strategy of vexatious activity").

Case's conduct in this case does not rise to a level of bad faith or vexatious litigation that warrants an award of attorneys' fees and costs. Though the parties in this case engaged in "hardball" litigation tactics throughout the pendency of this litigation, none of their conduct was "exceptional" in that regard. *See Forest Labs., Inc. v. Ivax Pharms., Inc.*, No. 03-891-JJF, 2008 U.S. Dist. LEXIS 14623, at *6-7, 2008 WL 522296 (D. Del. Feb. 26, 2008) (noting that "hard-fought" litigation does not necessarily constitute "vexatious or bad faith litigation" for purposes of awarding attorney fees under § 285). For the most part, both sides defended their respective positions throughout this litigation in apparent good faith. The court therefore finds that none of the parties are entitled to an award for attorneys' fees and costs in this case.

## V.    CONCLUSION

For the reasons stated above, the court will deny all of the outstanding post-trial motions. The court will address Kinze's inequitable conduct defense in a separate order that will be issued in the near future.

Dated: August __11__, 2011

CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CNH AMERICA LLC, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) C.A. No. 08-945-GMS |
| | ) |
| KINZE MANUFACTURING, INC., | ) |
| | ) |
| Defendant. | ) |

## **ORDER**

For the reasons set forth in the court's Memorandum of this same date, IT IS HEREBY

ORDERED that:

1. Kinze's Renewed Motion for Judgment as a Matter of Law (D.I. 327) is DENIED
   in all respects.

2. CNH's Motion for Judgment as a Matter of Law or for a New Trial (D.I. 328) is
   DENIED in all respects.

3. Kinze's Motion for Attorney Fees (D.I. 312) is DENIED.

Dated: August 11, 2011

_____
CHIEF UNITED STATES DISTRICT JUDGE